**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Chong X.,

File No. 26-CV-3591 (JMB/DLM)

Petitioner,

v.

Todd Blanche, *Attorney General*; Markwayne Mullin, *Secretary of Homeland Security*; David Venturella, *Senior Official Performing the Duties of the Director of U.S. Immigration & Customs Enforcement*; Marcos Charles, *Acting Executive Associate Director for Enforcement and Removal Operations*; Eric Tollefson, *Warden of Kandiyohi County Jail*; U.S. Immigration and Customs Enforcement; U.S. Department of Homeland Security; and David Easterwood, *Field Office Director for Enforcement and Removal Operations*,

Respondents.

**ORDER**

---

Nicholas Ratkowski and Elizabeth Sue Eckholm, Ratkowski Law PLLC, St. Paul, MN, for Petitioner Chong X.

David W. Fuller and Pedro Del Valle, IV, United States Attorney's Office, Minneapolis, MN, for Respondents Todd Blanche, Markwayne Mullin, David Venturella, Marcos Charles, U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security, and David Easterwood.

---

This matter is before the Court on Petitioner Chong X.'s[1] Petition for Writ of Habeas Corpus (Petition) under 28 U.S.C. § 2241 (Doc. No. 1 [hereinafter, "Pet."]), which names Todd Blanche, Markwayne Mullin, David Venturella, Marcos Charles, U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security, and David Easterwood (together, the Federal Respondents) and Eric Tollefson as Respondents. (*See id.*) For the reasons explained below, the Court grants the Petition.

**FINDINGS OF FACT**

1. Chong X. is a 42-year-old man who was born in a refugee camp in Thailand. (Pet. ¶¶ 2, 37; Doc. No. 7-1 at 1.) There is no evidence that he has ever lived in Laos, and Chong X. stated that he has never been there. (Doc. No. 7-7 at 1.)

2. Chong X. does not have a Laotian passport or any other proof of Laotian citizenship. (Pet. ¶ 37.)

3. Approximately thirty-five years ago, Chong X. entered the United States as a refugee after inspection. (*Id.* ¶ 2; Doc. No. 7-1 at 2.)

4. In January 1991, Chong X.'s status was adjusted to Lawful Permanent Resident. (Doc. No. 7-1 at 2.)

5. In March 2015, Chong X. was convicted in Ramsey County District Court of Second-Degree Possession of Methamphetamine and Terroristic Threats. (*Id.*)

6. In August 2015, immigration officials issued a Form I-682 Notice to Appear,

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

in which Chong X. was charged as removable under 8 U.S.C. § 1227(a)(2)(B)(i) for having been convicted of a controlled-substance crime. (Doc. No. 7-2.)

7. On September 10, 2015, Chong X. was ordered removed from the United States to Thailand, or, in the alternative, to Laos. (Pet. ¶ 3; Doc. No. 7-3.)

8. On December 9, 2015, immigration officials released Chong X. on an Order of Supervision pursuant to 8 C.F.R. §§ 241.5, 241.13 because there was no significant likelihood of his removal to Laos in the reasonably foreseeable future. (Pet. ¶ 4; Doc. No.7-1 at 2; Doc. No. 7-4.)

9. After his release, Chong X. attended all check-in appointments with immigration officials and complied with the terms of his order of release. (Pet. ¶¶ 10, 54.)

10. On June 5, 2026, government officials in Laos issued "a travel document"[2]

---

[2] Immigration and Customs Enforcement (ICE) records show that the government of Laos issued "a" single travel document. (Doc. No. 7-1 at 2; Doc. No. 7-6 at 1.) However, the Federal Respondents' declarant, ICE Deportation Officer Ivan Sabin, represents that the Laotian government issued (plural) "travel documents." (Doc. No. 7 ¶¶ 8, 12.) The Court does not credit Sabin's representation that Laos issued multiple travel documents for several reasons. First, Sabin does not attest to having specific personal knowledge of the facts and circumstances around Chong X.'s arrest, detention, or DHS's efforts to remove Chong X. (*See id.* ¶¶ 2, 3 (averring to have been "tasked with reviewing and responding to a request for records" and that the declaration is based on ambiguous "personal and professional knowledge," as well as his "review of records and systems maintained by ICE in the regular course of business, and information provided by other agents and officers").) Second, the Court is aware of Sabin's history of making false representations of fact and omitting material facts regarding non-citizen-petitioners' immigration histories. *See Manuel P. v. Blanche*, No. 26-CV-3455 (JMB/EMB), Doc. No. 8, at *3 n.3, *6 n.6 (D. Minn. Aug. 7, 2026); *Mohamed A. v. Blanche*, 26-CV-2799 (JMB/DTS), Doc. No. 31, at *4 n.2, *12–13 (D. Minn. June 18, 2026). Because Sabin's representation conflicts with primary source documents elsewhere in the record, and because of Sabin's lack of personal knowledge and his history of misrepresentations, the Court finds that Laos issued one (single) travel document.

to officials in ICE's Headquarters Post-Deportation Unit for purposes of Chong X.'s repatriation to Laos.[3] (Doc. No. 7 ¶ 8; Doc. No. 7-1 at 2.)

11. According to DHS records, the travel document issued by the Laotian government expires on September 3, 2026.[4] (Doc. No. 7 ¶ 8)

12. Chong X. has never been interviewed by the Laotian embassy regarding his citizenship. (Pet. ¶¶ 12, 13, 55.)

13. On August 11, 2026, more than two months after the travel document issued,[5] Chong X. appeared for a regularly scheduled check-in with ICE officials. (Pet. ¶¶ 5, 11; Doc. No. 7-1 at 2.)

14. While at the August 11, 2026 appointment, ICE officials served Chong X. with a Form 71-091 Notice of Revocation of Release, which informed Chong X. that his order of release "has been revoked pursuant to 8 C.F.R. § 241.13(i)" and that his removal would "take place no later than" September 3, 2026, for the following reason:

> Circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future. On June 5, 2026, the Lao People's Democratic Republic issued a travel document for your return to Laos. The document is valid through September 3, 2026.

---

[3] The Federal Respondents did not provide a copy of the travel document in their responsive papers. (Doc. Nos. 6, 7.) As a result, the Court cannot know the nature of the purported travel document or assess how likely removal can be based on the document.

[4] Because the Federal Respondents did not provide a copy of the travel document, the Court cannot verify this representation regarding the fast-approaching expiration of the travel document, either.

[5] The Federal Respondents do not present any evidence concerning the two months that lapsed from issuance of the travel document until Chong X.'s detention.

(Doc. No. 7-6 at 1.)

15. ICE officials detained Chong X. (Pet. ¶ 5.)

16. Also on August 11, 2026, after being served with the Notice of Revocation of Release, an ICE agent conducted an interview with Chong X. and recorded Chong X.'s oral response "regarding the reasons for revocation" as follows:

> I feel like I was misled from the beginning back in 2015. Being told that I was not going to get deported for pleading to my case. I was misled with info stating that I can still reverse the order of removal later on. I'm just afraid of going to a place I have never been to or live. I was born in a camp in Thailand. In conclusion, I will comply to what is ask[ed] and needed but just keep in mind that I'm going to a place I know nothing at. Will it be safe[?]

(Doc. No. 7-7 at 1.)

17. To date, ICE has not scheduled Chong X.'s departure from the United States. (*See* Doc. Nos. 6, 7.)

18. Since his detention, Respondents have been holding Chong X. at the Kandiyohi County Jail. (Pet. ¶ 18.)

19. On August 11, 2026, Chong X. filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.)

20. On August 12, 2026, the Court ordered, among other things, that Respondents file their response to the petition on or before 11:00 a.m. on August 14, 2026. (Doc. No. 4.)

21. On August 14, 2026, the Federal Respondents filed their response. (Doc. No. 6.) On August 18, 2026, Chong X. filed a reply. (Doc. No. 9.)

## DISCUSSION

In his Petition, Chong X. seeks immediate release, arguing that his detention violates applicable federal regulations, the Fifth Amendment, and the Administrative Procedure Act. For their part, the Federal Respondents argue that they complied with statutory and regulatory requirements when revoking Chong X.'s order of release and subsequently detaining him. For the reasons set forth below, the Court grants the Petition.

### A. Right to Habeas Relief

A writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)). For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted). The petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence. *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

### B. Violations of Regulations Governing Revocation of Supervised Release

Specific regulations control the federal government's ability to detain, release, and revoke the release of non-citizens subject to removal orders. The parties agree that 8 C.F.R.

§ 241.13(i), which applies when a non-citizen is released under an order of supervision after the expiration of a removal period, applies in Chong X.'s case. That regulation applies when ICE previously determined that there is no significant likelihood that the non-citizen will be removed in the reasonably foreseeable future, provided that no special circumstances justify continued detention. 8 C.F.R. § 241.13(g).

When an individual is released pursuant to section 241.13, that release can be revoked when, as is relevant in this matter, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). The regulations require ICE to notify the non-citizen "of the reasons for revocation of his or her release" and to conduct an initial informal interview promptly after the non-citizen's return to custody to afford them an opportunity to respond to the reasons for revocation set forth in the notification. *Id.* § 241.13(i)(3). Section 241.13(i) also places the burden on ICE to establish that "changed circumstances" justify the revocation of an order of release. *Roble v. Bondi*, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025); *Escalante v. Noem*, No. 9:25-CV-0182 (MJT), 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); *Nguyen v. Hyde*, No. 25-CV-11470 (MJJ), 2025 WL 1725791, at *3 n.2 (D. Mass June 20, 2025). To that end, ICE must have provided Chong X. with non-conclusory reasons for the revocation of his order of release at the time of revocation. *Sarail A.*, 803 F. Supp. 3d at 781–84.

To determine whether there "is a significant likelihood that the [non-citizen] will be removed in the reasonably foreseeable future," the agency must "consider[] factors probative of the [non-citizen's] future removal," such as the factors set out in section

241.13(f). *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 782 (D. Minn. 2025) (citing cases); *see also Kong v. United States*, 62 F.4th 608, 620 n.13 (1st Cir. 2023) (referring to the factors in subsection (f) as relevant to the subsection (i)(2) determination governing re-detention of a non-citizen released under section 241.13). Those factors include, but are not limited to, the history of Chong X.'s efforts to comply with the order of removal, the history of ICE's efforts to remove non-citizens to third countries that are an option for Chong X.'s removal, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of non-citizens to the countries in question.[6] *See* 8 C.F.R. § 241.13(f).

In addition, after making a determination that the section 241.13(f) factors supported revocation of release, ICE must notify the non-citizen of the reasons for the decision to revoke the previous order of release. *Id.* § 241.13(i)(3). Once this has occurred, ICE must also conduct an informal interview to afford the non-citizen an opportunity to respond to the reasons for revocation and to provide any information contesting the determination (or underlying facts) that there is a significant likelihood of removal in the reasonably foreseeable future. *Id.* ICE must then conduct a "revocation custody review," which includes "an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of

[6] Assuming without deciding that the provisions of section 241.4 apply to detention pending a determination of revocation based on changed circumstances, the record presented includes no evidence that the Federal Respondents made any effort to consider the factors required by section 241.4. Absent such evidence, section 241.4 would compel granting the Petition.

release." *Id.*

Here, the Court concludes that the Federal Respondents have not met their burden to justify the present detention of Chong X. because the record contains no evidence that the Federal Respondents followed the requirements of section 241.13. First, the record does not contain sufficient evidence showing that the Federal Respondents considered the factors listed in section 241.13(f) prior to making the initial determination to revoke the previous order of release. The Federal Respondents did present a statement representing that Chong X.'s departure from the United States is significantly likely and foreseeable because "ICE is now actively working to schedule Petitioner's repatriation flight to Laos before September 3, 2026." (Doc. No. 6 at 3 (citing Doc. No. 7 ¶ 11.).) However, this statement is unsupported by any documentation and contains no specific details regarding what is being done. It also does not establish that the unspecified actions ICE is now actively conducting occurred prior to the initial determination to revoke. This statement appears to have been conceived after-the-fact by Sabin, who, as noted *supra* note 2, lacks personal knowledge of this case and has a history of factual misrepresentations in similar declarations in other cases. (*See* Doc. No. 7 ¶ 11.) Accordingly, the Court cannot rely on this statement. No other evidence has been presented to show that the Federal Respondents considered the requisite factors prior to the initial determination to revoke.

Second, the record does not include evidence that the Federal Respondents adequately informed Chong X. of the basis for their initial determination to revoke, as required by section 241.13(i)(3). Here, the Notice of Revocation did not inform Chong X. that ICE was taking any steps to schedule travel to Laos. (*See* Doc. No. 7-6.) Instead, as

the Federal Respondents concede, Chong X. was informed only that "[o]n June 5, 2026, the Lao People's Democratic Republic issued a travel document for your return to Laos," and that "[t]he document is valid through September 3, 2026." (*Id.*; Doc. No. 6 at 9 ("[U]pon revocation, Petitioner was made aware of the reasons of the revocation as it appears on the first page of the Form 71-091 [Doc. No. 7-6].").) In this way, the Federal Respondents informed Chong X. of the existence of a changed circumstance, but they provided Chong X. with no reasons in support of their conclusion that Chong X. will be removed on or before September 3, 2026, or otherwise in the reasonably foreseeable future. While the Federal Respondents offer some explanation now in response to the petition, the record does not contain evidence that they informed Chong X. on the date they detained him and interviewed him. Such post-hoc rationalizations for the revocation cannot justify the detention in this case. *See Sarail A.*, 803 F. Supp. 3d at 781–84. Standing alone, as they must, the reasons for revocation given to Chong X. at the time of revocation are insufficiently conclusory to satisfy the applicable regulations.

Third, the record contains no evidence that after conducting the informal interview, DHS officials conducted a "revocation custody review," or otherwise evaluated "any contested facts," made any factual findings, or determined whether those facts warranted detention or release, as required by § 241.13(i)(3). Importantly, the Federal Respondents also make no argument that they conducted this revocation custody review. Absent any documentation in the record that after the informal interview, DHS officials conducted the required revocation custody review, the Court agrees with Petitioner that the Federal

Respondents violated applicable regulations.[7] Release is the appropriate remedy. *E.g.*, *Sarail A.*, 803 F. Supp. 3d at 788–89.

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED as follows:

1. Respondents are ORDERED to release Petitioner Chong X. immediately, subject to the same terms and conditions previously ordered, and in any event no later than 4:00 p.m. CT on August 22, 2026.

2. On or before 11:00 a.m. CT on August 24, 2026, counsel for Respondents shall file a letter affirming that they have released Petitioner Chong X.

3. On or before 11:00 a.m. CT on August 24, 2026, counsel for Respondents shall also file a declaration pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, and affirms with supporting documentation that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation). Respondents must submit each of the following three forms to affirm return of Petitioner's property: I-77, I-216, and G-589. If Petitioner's property is lost, Respondents must also submit form I-387, "Report of Detainee's Missing Property." If Respondents cannot provide one or more of these forms, Respondents must address why they are unable to do so.

4. Petitioner Chong X. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 20 U.S.C. § 2412(d).

[7] Given this decision, the Court need not address whether the provisions set forth in section 241.13 or the actual procedures followed in this case satisfy constitutional due process. Likewise, the Court need not also determine whether the decision to revoke the previous release order or the decision to detain Chong X. without complying with the requirements of section 241.13 violated the Administrative Procedure Act.

5. To the extent Petitioner Chong X. seeks additional relief, the Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 21, 2026

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court